NOT FOR PUBLICATION                                              CLOSED

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DARRYL B. TILLMAN, | |
| Plaintiff, | Civ. No. 07-0295 (JAP) |
| v. | |
|  | **OPINION** |
| MICHAEL J. ASTRUE, in his official capacity as COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

APPEARANCES:

Joel M. Solow, Esq.
Freeman & Bass, P.A.
24 Commerce Street
Newark, NJ 07102
  *Attorney for Plaintiff*

Christopher J. Christie
United States Attorney
Arthur Swerdloff
Special Assistant United States Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
  *Attorneys for Defendant*

PISANO, District Judge.

  This matter comes before the Court pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. § 301 *et seq.*, whereby Plaintiff Darryl B. Tillman ("Plaintiff" or "Tillman") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB")

and Supplemental Security Income Benefits ("SSIB").  The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  The issue presented is whether the Commissioner's decision to deny Plaintiff's application for DIB and SSIB is supported by substantial evidence.  Because the record provides substantial evidence supporting the Commissioner's decision that Plaintiff was "not disabled" and thus not entitled to benefits, the Court affirms the Commissioner's decision.

I.      BACKGROUND

   A.   *Plaintiff's Personal and Medical History*

Plaintiff is a forty-five-year-old man from Morristown, New Jersey, with a high-school level education.  He suffers from a variety of ailments, including obesity, hypertension, diabetes mellitus, hypercholesterolemia, Hodgkin's Disease, asthma, and coronary artery disease.  In October 1984, Plaintiff was diagnosed and treated for Hodgkin's Disease.  (Administrative Record ("AR") 206).  Since that time, the disease has been in remission.  On January 21, 2004, Plaintiff underwent a quadruple coronary artery bypass graft at Morristown Memorial Hospital.  (AR 128).  On August 8, 2004, Marc N. Sherman, M.D., F.A.C.C., conducted a nuclear stress test on Tillman.  (AR 157).  That test revealed ischemic heart disease in the distribution of the left anterior descending coronary artery, combined with anteroseptal wall motion abnormalities.  (AR 157).

On the morning of August 13, 2004, Plaintiff was admitted to the emergency room of Morristown Memorial Hospital, where he was diagnosed with acute coronary syndrome.  (AR 164).  A Cardiac Catheterization and Angiography Report dated August 13, 2004 concluded that

Plaintiff suffered from severe triple vessel disease and global moderate left ventricular dysfunction without significant mitral regurgitation.  (AR 182).  The Report also revealed "a lesion of moderate degree just after the saphenus vein graft to the ramus intermedius[.]"  (AR 182).

On April 22, 2005, Tillman underwent a stress test with Myoview at Morristown Memorial Hospital.  (AR 322).  That test revealed no significant ST or T abnormalities, no arrhythmia, and no cardiac symptoms.  (AR 323).  In a report dated May 2, 2005, Leonard Joachim, M.D., a specialist in internal and pulmonary medicine, reported his findings of his examination of Plaintiff conducted on April 13, 2005.  (AR 206).  Dr. Joachim reported that Tillman complained of difficulty in breathing and exhibited a depressive mood.  (AR 207).  The report also noted bilateral inspiratory and expiratory wheezing, and an electrocardiogram revealed a mitral valve abnormality.  (AR 208).  Dr. Joachim ultimately concluded that Plaintiff suffered from severe restrictive and moderate obstructive lung disease, as well as chronic asthmatic bronchitis.  (AR 208).  On June 21, 2005, Plaintiff subjected himself to a psychiatric examination by Robert T. Latimer, M.D., P.A., as recorded in a report dated June 24, 2005.  (AR 212).  Dr. Latimer diagnosed Plaintiff with an adjustment disorder with anxiety and major depression.  (AR 214).

On January 11, 2006, Leonard J. Moss, D.O., conducted another stress test on Tillman.  (AR 386).  That test revealed an abnormal perfusion imaging study, "a small mildly severe nearly completely reversible defect involving the anteroseptal and apical walls[,]" "a small mildly severe defect involving the inferior wall" consistent with a "probable scar[,]" and "moderate hypokinesis involving the inferolateral segment."  (AR 387).  On September 1, 2006, Jeffrey G.

Schwartz, M.D., F.A.C.C., issued a Preliminary Contrast-Enhanced Cardiac CT Report. (AR 409). Dr. Schwartz found the left ventricle, left atrium, all valves, the pericardium, and the left main coronary artery to be normal, but noted that the LAD branch demonstrated moderate diffuse disease. (AR 409). Dr. Schwartz also found that the left circumflex branch in the coronary artery is diminutive and diffusely diseased, while the right coronary artery is moderately diseased proximally. (AR 409). The doctor ultimately concluded that Plaintiff suffered from "severe three-vessel native coronary artery disease and patent spahenous vein grafts and right internal mammary artery graft, although distal disease beyond the anastamoses is present." (AR 410). He also concluded that Tillman "[p]robably" suffered from "moderate left ventricular systolic dysfunction." (AR 410).

### B. *Procedural History*

On September 16, 2004, Plaintiff first filed applications with the Social Security Administration ("SSA") to recover DIB and SSIB, pursuant to Titles II and XVI of the Social Security Act. (AR 25-27). On November 16, 2004, the SSA denied Plaintiff's claims for benefits, determining that he was not disabled under their rules. (AR 28). On December 7, 2004, Plaintiff filed a request for reconsideration of that denial, and, on December 23, 2004, the SSA again denied Plaintiff's request for benefits. (AR 35-38). On January 19, 2005, Plaintiff filed a request for a hearing by an administrative law judge. (AR 39).

Accordingly, Administrative Law Judge Dennis O'Leary ("the ALJ") held hearings on Plaintiff's claim for DIB and SSIB on March 10 and June 22, 2006. (AR 12, 412). In a thirteen-page Decision dated August 31, 2006, the ALJ denied Plaintiff's claims, finding that he is not disabled under sections 216(I), 223(d), or 1614(a)(3)(A) of the Social Security Act. (AR 24).

Initially, the ALJ found that Plaintiff "meets the insured status requirements of the Social Security Act through June 30, 2008[ and] has not engaged in substantial gainful activity since December 14, 2003, the alleged onset date[.]" (AR 14). The ALJ next found, based on the medical reports, that Plaintiff suffered from "the following 'severe' combination of impairments: ischemic heart disease, asthma and obesity[.]" (AR 15). Nevertheless, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (AR 16). Moreover, the ALJ "considered all symptoms and . . . objective medical evidence and other evidence[,]" (AR 18), to find that Plaintiff had sufficient residual function capacity—combined with his age, education, and work experience—to enable him to perform jobs that exist in the national economy, (AR 23). As a result, the ALJ concluded that Plaintiff did not suffer from a "disability" for purposes of the Social Security Act. (AR 24).

On January 17, 2007, Tillman filed the instant action in this Court, challenging the ALJ's Decision. Specifically, Plaintiff argues that the ALJ's denial of benefits was not based on substantial evidence because the ALJ improperly relied on the Medical-Vocational Guidelines to find that Plaintiff is not disabled, in contravention to Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000). In addition, Plaintiff challenges the ALJ's Decision by submitting that the ALJ should not have rejected the consulting physicians' reports submitted by Plaintiff. Finally, Plaintiff contends that the ALJ should have afforded more weight to Plaintiff's testimony of subjective complaints. The Social Security Administration opposes the appeal, arguing that the ALJ's Decision is supported by substantial evidence.

**II.    DISCUSSION**

**A.     *Standard of Review***

The standard under which the District Court reviews an ALJ decision is whether there is substantial evidence in the record to support the ALJ's decision. *See* 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "[M]ore than a mere scintilla," substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The inquiry is not whether the reviewing court would have made the same determination, but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence, therefore, may be slightly less than a preponderance. *See Hanusiewicz v. Bowen*, 678 F. Supp. 474, 476 (D.N.J. 1988).

The reviewing court, however, does have a duty to review the evidence in its totality. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). As such, "a court must take into account whatever in the record fairly detracts from its weight." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (internal quotations omitted). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987). As the Third Circuit has instructed, a full explanation of the Commissioner's reasoning is essential to meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978).  Nonetheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

      **B.**    *Establishing a Disability Under the Act*

Plaintiff's eligibility for DIB and SSIB is governed by 42 U.S.C. §§ 423 and 1382.  A claimant is eligible for DIB and SSIB if he meets the disability period requirements of 42 U.S.C. § 416(I), and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A person is disabled for these purposes if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520.  For the first two steps, the claimant must establish (1) that he has not engaged in "substantial gainful activity" since the onset of his alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)-(c).  Given that a claimant bears the burden of establishing these first two requirements, the failure to meet this burden automatically results in a denial of benefits.  *See Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies his initial burdens, the third step requires that he provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). *See* 20 C.F.R. § 404.1520(d). Upon such a showing, he is presumed to be disabled and is automatically entitled to disability benefits. *Id*. If he cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits him to resume his previous employment. *See* 20 C.F.R. § 404.1520(e). "Residual functional capacity" is defined as "that which an individual is still able to do despite limitations caused by his or her impairments." 20 C.F.R. § 404.1520(e). If the claimant is found to be capable of returning to his previous line of work, then he is not "disabled" and not entitled to disability benefits. 20 C.F.R. § 404.1520(e). Should the claimant be unable to return to his previous work, the analysis proceeds to step five. To determine the physical exertion requirements of work, jobs are classified as sedentary, light, medium, heavy, and very heavy.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. *See* C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits. *Yuckert*, 482 U.S. at 146-47 n.5.

C.  *The ALJ's Decision is Supported by Substantial Evidence*

The ALJ applied the facts from the record to that five-step analysis to conclude that Plaintiff is not entitled to either DIB or SSIB. Initially, at the first step, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of his disability. (AR 14). Next, turning to the second step of the analysis, the ALJ concluded that

Plaintiff suffered from a severe combination of impairments, including ischemic heart disease, asthma, and obesity. (AR 15). To reach that result, the ALJ considered Plaintiff's medical history, the record of his quadruple coronary artery bypass graft surgery, various stress tests conducted on Plaintiff, multiple EKG results obtained between August 4, 2004 and January 11, 2006, and medical reports from physical examinations. (AR 15-16). In addition, the ALJ found that Plaintiff's recorded weight revealed body mass indexes of 32.9, 35.3, and 37.2 between 2004 and 2006, indicating that Plaintiff's obesity was morbid at some points within that time frame. (AR 16).

Nevertheless, upon reaching the third step, the ALJ found that Plaintiff did not demonstrate that any of those impairments or combination of those impairments meets or medically equals one of the listed impairments in the Listing of Impairments. (AR 16); *see* 20 C.F.R. § 404.1520(d). To reach this result, the ALJ gave significant, but not substantial, weight to the opinion of the DDS medical consultant who participated in the initial adjudication of Plaintiff's claim. (AR 16). In addition, the ALJ accorded substantial weight to the opinion of Dr. Martin Fechner, who is board certified in internal medicine. (AR 16). That opinion indicated that, based on the clinical and laboratory evidence presented by Plaintiff, Plaintiff's impairments, or combination of impairments, did not meet or equal any impairment in the Listings of Impairments. (AR 16). Furthermore, although the ALJ noted that the "most similar listing to [Plaintiff's] combination of impairments is section 4.04 (Ischemic heart disease)[,]" the medical evidence, as considered by Dr. Fechner, revealed that Plaintiff's "manifestations of ischemia" did not rise to the level of meeting section 4.04A, B, or C. (AR 16).

Considering next Plaintiff's proofs of "abnormal wall motion, dilated left ventricle,

decreased left ventricular function, mitral valve regurgitation and congestive heart failure[,]" the ALJ found that these ailments did not satisfy the listing for chronic heart failure, under section 4.02. (AR 17). The ALJ also found that Plaintiff's asthmatic condition did not satisfy section 3.03. (AR 18). Finally, in respect of the third step, the ALJ considered Plaintiff's obesity, noting that, although there is no listing for this impairment, he must consider it when evaluating other impairments. (AR 18). Accordingly, the ALJ determined that Plaintiff's obesity may have an effect on other impairments, but those impairments have not been "of listing level severity [] for the required duration." (AR 18).

Next, in order to determine whether Plaintiff has met steps four and five, the ALJ made specific findings, based on the record, of Plaintiff's Residual Functional Capacity ("RFC"). (AR 18-22). Specifically, the ALJ concluded that Plaintiff's

> [RFC] is for lifting and/or carrying up to 10 pounds occasionally, lifting and/or carrying less than 10 pounds frequently, standing and/or walking (with normal breaks) for a total of at least 2 hours per day, doing occasional ramp/stair climbing, balancing, stooping, kneeling, crouching and crawling, and performing all other work-related activities not involving ladder/rope/scaffold climbing or exposure to undue amounts of asthma irritants such as dust, temperature extremes, humidity/wetness, fumes, odors, chemicals or gases, or more than routine job stress.

(AR 18). To reach that conclusion, the ALJ "considered all symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (AR 18). In addition, the ALJ noted that he "considered opinion evidence" to determine Plaintiff's RFC and made specific reference to Plaintiff's subjective complaints. (AR 18).

Based on the findings as to Plaintiff's RFC, the ALJ, at step four, found that Plaintiff is unable to perform his past relevant work as a truck driver because that occupation "demands

lifting and/or carrying more than 10 pounds occasionally[.]" (AR 22). Next, the ALJ determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled[.]'" (AR 22). Ultimately reaching the final step, the ALJ found that, "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR 23). The ALJ determined that "[t]he established [RFC] is fully compatible with the exertional demands of sedentary work[,]" and, thus, "a finding of 'not disabled' would be appropriate under the framework of Medical-Vocational Rules 201.27-201.29, irrespective of vocational experience." (AR 23). Accordingly, the ALJ concluded that Plaintiff is not entitled to either DIB or SSIB under the SSA.

Plaintiff now raises three main challenges to the ALJ's Decision: (1) that the ALJ improperly relied on the Medical-Vocational Guidelines to determine that Plaintiff is not disabled; (2) that the ALJ improperly rejected Plaintiff's consulting physicians' reports that concluded that Plaintiff is disabled; and (3) that the ALJ did not accord sufficient weight to Plaintiff's testimony of subjective complaints.

### 1. The ALJ Properly Relied on the Medical-Vocational Guidelines

Plaintiff first argues that the ALJ inappropriately utilized the vocational rules to direct a finding that Plaintiff was not disabled. Specifically, Plaintiff claims that the Commissioner erred in mechanically relying on the Medical-Vocational Guidelines, or "grids," to reach an unfavorable decision in his case. Plaintiff asserts that, because he suffers from non-exertional impairments, the ALJ was required to consult a vocational expert before determining that he was not disabled. The Court disagrees.

In rendering his decision, the ALJ explicitly found that Plaintiff did not suffer from any non-exertional limitations that have any "significant effect on the occupational base, which consists of the unskilled sedentary jobs that exist throughout the national economy[.]"  (AR 23). This finding was supported by substantial evidence.  Although the ALJ noted that Plaintiff had some occasional limitations on climbing, balancing, crawling, and kneeling, he concluded that those limitations did not compromise Plaintiff's ability to perform a broad range of sedentary work.  Moreover, the ALJ found that, because "[m]ost job environments do not involve excessive amounts of dust and other potential asthma irritants, . . . the impact on the broad world of work is minimal where an individual just needs to avoid 'excessive' levels of dust, etc."  (AR 23). Further, the ALJ found that, based on the objective medical evidence available, Plaintiff's mental impairments were not severe and, accordingly, "a limitation to no more than routine job stress would have no significant impact on the unskilled occupational base."  (AR 23).  Thus, the ALJ's determination that Plaintiff had no significant non-exertional limitations, and subsequent mechanical application of the Medical-Vocational Guidelines, was proper.  As a result, the ALJ was not required to consult a vocational expert.  *See Caruso v. Comm'r of Social Security*, 2004 WL 1147065, *4 (3d Cir. May 19, 2004) (rejecting argument that ALJ improperly relied on Guidelines where objective medical evidence and claimant's own testimony did not support her alleged non-exertional impairments); *Cartenega v. Comm'r of Social Security*, 2002 WL 334115, *2 (3d Cir. 2002) (holding that ALJ's application of Guidelines without consulting vocational expert was reasonable where objective medical evidence failed to support claimant's non-exertional limitations).

### 2. **The ALJ Had Sufficient Support to Disregard the Reports of**

### **Plaintiff's Consulting Physicians**

Plaintiff next argues that the ALJ improperly rejected the opinions of his consulting physicians, Doctors Ahmad, Joachim, and Latimer. The Court disagrees and finds that the ALJ did have an adequate basis for rejecting the conclusion of those physicians that Plaintiff is "totally disabled."

First, although all three physicians indicated that Plaintiff is totally disabled, the decision regarding whether an individual is disabled or unable to work under the Act is an opinion reserved to the Commissioner. 20 C.F.R. § 416.927(e)(1). Thus, although the diagnosis of a consulting physician is considered to determine whether a claimant is "disabled," the ALJ has the final responsibility to determine a claimant's RFC to perform past relevant work. 20 C.F.R. § 404.1527 (e)(2).

The ALJ recognized the opinions of Dr. Ahmad, Dr. Joachim, and Dr. Latimer, but found that "they do not deserve particular weight because they address the ultimate, legal issue in this case[.]" (AR 20). In addition, the ALJ noted that "all three opinions were provided in support of a worker's compensation claim, using the definition of disability under the worker's compensation program, not the one under the Social Security Act." (AR 20). Further, the ALJ discredited the credibility of these opinions because "the doctors all examined the claimant at the request of an attorney who was representing the claimant in a worker's compensation claim against a former employer[.]" (AR 20). Finally, the ALJ determined that the complaints and findings by these doctors "are uncorroborated by any treating source or by any unbiased consulting medical source." (AR 20).

Consequently, the Court finds that the ALJ appropriately afforded minimal weight to the

reports of the three physicians because they were simply boilerplate language and were unsupported by other evidence in the record. *See Miller v. Comm'r of Social Sec.*, 172 F.3d 303, 305 (3d Cir. 1999).

### 3. The ALJ Properly Considered Plaintiff's Subjective Complaints

Finally, Plaintiff argues that the ALJ failed to give adequate credence to Plaintiff's subjective complaints. In his decision, the ALJ made specific reference to Plaintiff's allegations regarding his limitations in light of the objective medical evidence. Considering Plaintiff's subjective complaints, however, the ALJ concluded that Plaintiff's limitations did not preclude him from performing substantial gainful activity. (AR 22). As discussed above, 20 C.F.R. § 404.1529 requires that the objective medical evidence demonstrate a basis for subjective complaints. Complaints about pain or other symptoms alone will not establish that a claimant is disabled. *See* 20 C.F.R. § 404.1529(a). Rather, these complaints must be coupled with objective medical signs and laboratory findings that demonstrate a medical impairment that could reasonably produce the alleged subjective complaints. *See id.*

The Court finds that the ALJ's evaluation of Plaintiff's subjective complaints of pain and limitations on daily activities was proper and supported by substantial evidence. *See* 20 C.F.R. 404.1529(c). First, the ALJ noted that Plaintiff was able to perform many daily activities and chores and that his example of stress with which he could not cope—that is, living with his girlfriend—is a personal situation and did not "bear significantly upon his ability to cope with routine job stress." (AR 21). The ALJ also noted that, in respect of Plaintiff's mental heath, the conservative nature of his treatment indicated that his condition was not of debilitating magnitude. (AR 22). The ALJ stated that Plaintiff "has not alleged ongoing mental health care, or persistent

mental symptoms or limitations[, t]he medications listed in his medical records have rarely if ever included psychotropic medications[.]" (AR 22). Finally, the ALJ noted that Plaintiff was able to cope with the demands of the hearing, drive, cook, perform household chores, take small walks, and sit for eight hours a day with normal breaks on a sustained basis.

Consequently, the ALJ considered Plaintiff's subjective complaints to determine that they did not interfere with his ability to perform sedentary work. Moreover, Plaintiff's argument that the ALJ should have required Plaintiff to submit to a medical examination by a physician retained by the Social Security Administration is without merit, and, thus, the Court finds no reason to reverse the decision.

### III.  CONCLUSION

Based on the foregoing, the Court affirms the Commissioner's decision denying Plaintiff's application for DIB and SSIB. An appropriate order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: December 18, 2007